**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DEBORAH L. PRECOUR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No.  3:12-CV-2666-L (BF) |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Deborah L. Precour's ("Plaintiff") claims for Disability Insurance ("DI") and Supplemental Security Income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act (the "Act").  For the following reasons, the Court recommends that the District Court AFFIRM the final decision of the Commissioner and dismiss Plaintiff's Complaint with prejudice.

**Background**

Plaintiff alleges that she is disabled due to multiple injuries sustained in a motor vehicle accident on August 30, 2001, a cognitive disorder, depression, anxiety, and obesity.  After her applications for DI and SSI benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge.  That hearing was held on January 26, 2011.  At the time of the hearing, Plaintiff was 56 years old.  She is a high school graduate and has past work experience as a bookkeeper and a packing/shipping clerk.  Plaintiff has not engaged in substantial

gainful activity since November 24, 2008, which is the amended date of her alleged disability onset. Plaintiff last met the insured status requirements of the Act on December 31, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to DI or SSI benefits. Although the medical evidence established that Plaintiff suffered from status post multiple injuries due to a motor vehicle accident, obesity, and a cognitive disorder, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that Plaintiff was capable of working as a linen room attendant, a laundry worker, and a dining room attendant -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court in which she contends that the hearing decision is not supported by substantial evidence and results from reversible legal error.

## Legal Standards

A claimant must prove that she is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

2

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are that:

> (1)    an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

> (2)    an individual who does not have a "severe impairment" will not be found to be disabled;

> (3)    an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

> (4)    if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

> (5)    if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry.  *Leggett*, 67 F.3d at 564.  The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)).  If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan* , 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## Analysis

Plaintiff's appeal of the Commissioner's decision raises the following issues:

1.      Whether the ALJ improperly rejected the retrospective opinions of one of Plaintiff's treating physicians; and

2.      Whether the ALJ's assessment of Plaintiff's residual functional capacity is not supported by substantial evidence and results from reversible legal error.

## Treating Physician Opinion

Plaintiff argues that the ALJ failed to give controlling weight to the retrospective opinions of her treating neuropsychologist, Dr. Richard Fulbright. (*See* Plf. Br. at 3-6). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight,

4

it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." SSR 96-2p, 1996 WL 374188, at *4 (Jul. 2, 1996). *See also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

> 1.    The physician's length of treatment of the claimant;
>
> 2.    The physician's frequency of examination;
>
> 3.    The nature and extent of the treatment relationship;
>
> 4.    The support of the physician's opinion afforded by the medical evidence of record;
>
> 5.    The consistency of the opinion with the record as a whole; and
>
> 6.    The specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).

More specifically:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *4-5.

The medical record in this case reveals that Plaintiff suffered multiple severe injuries in 2001 as a result of a serious motor vehicle accident, including a traumatic brain injury and resulting cognitive deficits. (Tr. at 289, 292-305). Richard L. Fulbright, Ph.D., a clinical neuropsychologist, provided cognitive rehabilitative therapy services to Plaintiff in 2003 and 2004. (*Id.* at 379-402).

He also made several formal assessments of Plaintiff's neuropsychological condition.  (*See id.* at 389-402, 615-18, 633-48).  In a Medical Assessment of Ability to Do Work-Related Activities (Mental) completed on October 25, 2010, Dr. Fulbright opined that Plaintiff had poor ability to handle stress, maintain attention/concentration, complete a normal workday or workweek without extensive interruptions or breaks, behave in an emotionally stable manner, and relate predictably in social situations.  (*Id*. at 617-18).  On February 20, 2011, Dr. Fulbright completed a Psychiatric Review Technique report in which he further opined that Plaintiff meets the requirements for Listing 12.02, Organic Mental Disorders, as evidenced by her memory impairment, perceptual or thinking disturbances, personality change, mood disturbance, emotional lability, and impairment in impulse control.  (*Id.* at 633-34).  Dr. Fulbright indicated that, because of her brain injury, Plaintiff experiences cognitive deficits resulting in "significant residual impairment in her neurobehavioral regulation and executive cognitive functioning" that are disabling.  (*Id.* at 634).  Specifically, Plaintiff's mental impairments "interfere with her ability to deal with normal stressors in the workplace, adapt to change or added pressure in the workplace, interact effectively with others (both public and coworkers), tolerate criticism, and keep up with the normal pace of the workplace" and constitute "significant obstacles to her being able to work competitively in any employment situation." (*Id.*).  According to Dr. Fulbright, Plaintiff's impairments have been disabling "at least since 12/31/2009." (*Id.* at 645, 648).

The ALJ rejected most of Dr. Fulbright's opinions, finding that Plaintiff had the residual functional capacity to perform a limited range of medium work.  (*See id.* at 18).  The judge acknowledged that Plaintiff has some cognitive deficits, but found that she was able to function at a higher level than alleged based on her past earnings, activities of daily living, other medical

evidence from state agency physicians, and Plaintiff's own testimony.  (*Id.* at 19-20).  Among other

things, the judge noted that Plaintiff admitted being able to take care of her personal hygiene, check

emails on a computer, clean her house, prepare meals for herself and her husband, visit her mother

in a nursing home two to three times a week, run errands, care for her pets, shop for gifts, clothes,

and groceries, watch television, do jigsaw puzzles, and participate in the hand bell choir at church.

(*Id.* at 20; 243-55).  The ALJ accounted for Plaintiff's mental impairments by determining that her

RFC is limited to jobs that require only simple 1-2 step instructions and no more than occasional

contact with co-workers and supervisors and incidental contact with the public.  (*Id.* at 18, 19-20).

In a thorough written decision, the judge explained that Dr. Fulbright's opinions regarding the

disabling nature of plaintiff's mental impairments were not entitled to controlling weight:

> The undersigned assigns little weight to Dr. Fulbright's opinion
> because Dr. Fulbright had only recently seen the claimant in April 5,
> 2010.  Before this visit, Dr. Fulbright last notes [were] in 2004, six
> years prior to the claimant's April of 2010 visit.  In fact, medical
> records submitted after the hearing from Medical Family Health
> Center on April 7, 2010, two days after her visit to Dr. Fulbright,
> shows when the claimant presented with complaints of irritability,
> examination showed the claimant's affect was normal and she was
> not anxious.  Furthermore, the claimant had normal insight, exhibited
> normal judgment and did not have pressured speech or suicidal
> ideation.

(*Id*. at 21).

This explanation constitutes "good cause" for giving Dr. Fulbright's opinion limited or no

credence.  Although the ALJ did not make a specific finding as to each of the factors set forth in

20 C.F.R. § 1527(d)(2), her decision cites to the relevant regulations and social security rulings and

indicates that each factor was considered.  (*See id.* at 20-21).  The regulations require only that the

Commissioner "apply" the section 1527(d)(2) factors and articulate good reasons for the weight

assigned to the treating source opinion.  *See* 20 C.F.R, § 1527(d) (2).  The ALJ need not recite each factor as a litany in every case.  *See Johnson v. Astrue*, No. 3:08-CV-1488-BD, 2010 WL 26469, at *4 (N.D. Tex. Jan. 4, 2010).  Moreover, Dr. Fulbright's conclusion that Plaintiff's cognitive deficits are "disabling," (Tr. at 634), is not a medical opinion and, thus, has no special significance. 20 C.F.R. § 404.1527(e)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination that claimant is "unable to work" is a legal conclusion reserved to the Commissioner). The ALJ used the proper legal standards in rejecting Dr. Fulbright's medical opinions, and the resulting determination is supported by substantial evidence.

### Residual Functional Capacity

Plaintiff further argues that the ALJ's assessment of her residual functional capacity fails to include all the limitations supported by the record.  (Plf. Br. at 6-7).  More specifically, Plaintiff argues that the ALJ erred in implicitly finding that her depression and anxiety were not severe impairments.  Had the ALJ found such impairments severe, Plaintiff contends, the judge would have given greater weight to several letters from her family members, friends, and former employers and found that her RFC was further limited by a need for extended rest periods that would preclude full-time work activities.  (*Id.*).  To demonstrate that she suffers from severe depression and anxiety, Plaintiff relies on entries in her medical records which document diagnoses of depression and symptoms of anxiety and reflect that she was prescribed medication for these conditions.  (*See* Tr. at 276, 334-35, 338, 415, 528).  However, the diagnosis of symptoms or a condition, without more, is insufficient to establish that a condition is "severe."  *See Musgrove v. Astrue*, No. 3:07-CV-0920-BD, 2009 WL 3816669, at *3 (N.D. Tex. Nov. 13, 2009) (citing cases).  Rather, there must be evidence that the diagnosed condition limits or interferes with the claimant's ability to engage in

work-related activities. *Id.*; *see also McClatchy v. Barnhart*, No. ASA-03-CA-0914-X, 2004 WL 2810100, at *6 (W.D. Tex. Dec. 3, 2004), *rec. adopted*, 2005 WL 1593395 (W.D. Tex. Jun. 30, 2005).

None of the medical evidence on which Plaintiff relies establishes that Plaintiff's depression and anxiety limited her ability to engage in work-related activities. Most of the medical records were created prior to Plaintiff's amended alleged disability onset and the date she stopped working for the last time. (*See* Tr. at 334-35, 337-38, 384, 414). "The ability to work while experiencing an impairment suggests that the impairment is not severe." *Musgrove*, 2009 WL 3816669, at *6 (quoting *Winget v. Astrue*, No. MO-07-CV-017, 2007 WL 4975206, at *7 (W.D. Tex. Dec.14, 2007)). Nor does the April 7, 2010 office visit report establish a severe impairment. The treating physician noted that, notwithstanding her depressive disorder, Plaintiff's affect was normal, she was not anxious, had normal insight, and exhibited normal judgment. (Tr. at 529). He prescribed Zoloft to treat her symptoms. (*Id.*). Significantly, he did not find that she required extended rest periods during the day or place any other restrictions on her ability to do work-related activities because of her mental condition.

To the extent Plaintiff relies on letters from family members, friends, and a former employer to establish that she required extended rest periods that would preclude full-time work activities, the record reflects that the ALJ properly considered and rejected such evidence. (Tr. at 21). The social security regulations provide that evidence from "other sources," including non-medical sources such as "spouses, parents ..., siblings, other relatives, friends, neighbors, clergy, and employers," may be useful to show the severity of an individual's impairment and how it affects her ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). In

9

considering opinions from such "other sources," the ALJ may consider factors such as (1) the nature and extent of the relationship between the source and the individual; (2) the source's qualifications; (3) the source's area of speciality or expertise; (4) the degree to which the source presents relevant evidence to support his or her opinion; (5) whether the opinion is consistent with other evidence; and (6) any other factors that tend to support or refute the opinion. *See* 20 C.F.R. §§ 404.1527(d) & 416.927(d). The ALJ should generally explain the weight given to opinions from other sources. *See Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000) (ALJ's failure to recognize existence of evidence from family members, therapists, and counselors contributed to determination that administrative decision was not supported by substantial evidence). Here, the ALJ specifically referenced the letters from Plaintiff's family members, friends, and former employer in her decision and explained that she "assign[ed] little weight to these statements because they were all written in 2011 and do not specify any particular time period to which they should apply." (Tr. at 21). The ALJ thus properly evaluated the other source opinions and articulated an appropriate reason for rejecting them.

In view of the record as a whole, the ALJ was entitled to find that Plaintiff's depression and anxiety were not severe impairments, and her RFC assessment incorporates all limitations that are supported by the record.

## **RECOMMENDATION**

The Court recommends that the District Court AFFIRM the final decision of the Commissioner.

SO RECOMMENDED, July 18,  2013.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of the Findings, Conclusions, and Recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy.  A party filing objections must specifically identify the part of the findings, conclusions, and recommendation to which an objection is being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections within 14 days after being served with a copy of the Findings, Conclusions, and Recommendation shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).